UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

PAUL BABIAK,

    Plaintiff,

v.

STATE OF NEVADA, ex rel., ITS DEPARTMENT OF TAXATION; JOANN HERYFORD; LAURA HERNANDEZ; and CATHY CHAMBERS,

    Defendants.

3:07-CV-00197-PMP (RAM)

O R D E R

Presently before the Court is Defendants' Motion for Summary Judgment (Doc. #10), filed on December 28, 2007. Plaintiff filed an Opposition (Doc. #11) on January 15, 2008. Defendants filed a Reply (Doc. #12) on January 25, 2008.

**I. BACKGROUND**

Plaintiff Paul Babiak is a disabled person who uses a wheelchair. (Mot. for Summ. J., Dep. of Paul Babiak ["Babiak Dep."] at 7.) Plaintiff lost the use of his legs when he was seriously injured in a motorcycle accident in 1981. (Id. at 16-17.) Defendants are the State of Nevada Department of Taxation and three Department of Taxation employees who participated in hiring decisions concerning Plaintiff: Joann Heryford, Laura Hernandez, and Cathy Chambers. (Compl. [Doc. #1].) Plaintiff alleges Defendants discriminated against him on the basis of his disability when they selected a non-disabled job applicant over Plaintiff. (Id. at ¶ 7.)

///

1    Plaintiff graduated from high school in 1979. (Babiak Dep. at 10.) Several years
2 later, Plaintiff began attending Santa Barbara City College, and earned an associate's degree
3 in 1985. (Id. at 10-11.) In the early 1990s, Plaintiff received an undergraduate business,
4 economics, and accounting degree from the University of California, Santa Barbara. (Id. at
5 11.) He obtained a master's degree in taxation from Golden Gate University in 1994. (Id.
6 at 13.)

7    While attending Santa Barbara City College, Plaintiff worked for the Santa
8 Barbara Controllers Office part time, for approximately six to seven months. (Id. at 18.)
9 This was a temporary position during which Plaintiff audited the financial and personal
10 checking account records of a Santa Barbara attorney. (Id.) Plaintiff also helped a friend
11 start a non-profit organization. (Id. at 19-20.) For several years, Plaintiff primarily
12 supported himself through Social Security Disability benefits and trading securities for
13 himself. (Id. at 20-22.)

14    Plaintiff applied for an Auditor II position with the Department of Taxation in
15 late 2007. (Id. at 48.) The Auditor II hiring process began with the ranking of applicants
16 who qualified for the position based on a written test. (Mot. for Summ. J., Dep. of Joann
17 Heryford ["Heryford Dep."] at 42.) The interview team interviewed the top five ranked
18 available applicants. (Id. at 42-43.) The team interviewed Plaintiff in January 2004. (Mot.
19 for Summ. J., Ex. B.)

20    Defendants' application materials included a form identifying seven essential
21 functions of the Auditor II position. (Mot. for Summ. J., Ex. A.) The third item states,
22 "The candidate must be able to access taxpayer record locations when less than reasonable
23 accommodations exist (ie. [sic] no elevator, records stored in a warehouse)." (Id.) The
24 fourth item states, "The candidate must be able to lift/move boxes of records and
25 remove/replace records that reside in tall file cabinets or shelves." (Id.) The form asks the
26 applicant whether he can "perform these essential functions with or without reasonable

1  accommodation." (Id.) Plaintiff marked "No" and wrote, "I am very interested in this
2  position. I use a wheelchair and may have difficulty with question #3 access." (Id.)
3  When Hernandez realized Plaintiff used a wheelchair, she told him they may not
4  be able to interview him for the position because the job requires going to different
5  businesses, many of which are not wheelchair accessible. (Babiak Dep. at 57; Mot. for
6  Summ. J., Dep. of Laura Hernandez ["Hernandez Dep."] at 5-7.) Defendants Hernandez
7  and Heryford decided to interview Plaintiff. (Heryford Dep. at 24.) During the interview,
8  Plaintiff discussed the requirements of the position with Hernandez and Heryford any
9  limitations his confinement to a wheelchair might pose. (Babiak Dep. at 66-68.)
10 Hernandez told Plaintiff that audits are performed in diverse business locations, including
11 storage sheds and construction trailers, which are not wheelchair accessible. (Id. at 66-67;
12 Hernandez Dep. at 5-7.)
13 Defendants selected another applicant, Grace Chu ("Chu"), for the position.
14 (Mot. for Summ. J., Dep. of Cathy Chambers ["Chambers Dep."] at 7.) Chu is not disabled.
15 (Dep. of Grace Chu ["Chu Dep."] at 16.) Defendants claim they decided to hire Chu
16 because she was a superior candidate and had experience with the same kinds of documents
17 she would be auditing for the Department of Taxation. (Chambers Dep. at 22.) Hernandez
18 and Heryford called Plaintiff several weeks after the interview to inform him he was not
19 selected for the position. (Babiak Dep. at 70-71.)
20 The Auditor II position for which Plaintiff applied involves field auditing.
21 (Hernandez Dep. at 5.) Conducting a field audit typically requires reviewing a taxpayer's
22 records at the taxpayer's place of business. (Heryford Dep. at 7.) Auditors in the Auditor II
23 position usually work independently. (Id. at 63.) Taxpayers have some discretion as to
24 where they will produce the records and where the audit will be conducted. (Id. at 67-68.)
25 Defendants claim that while taxpayers are required to make their records available for
26 audits, they are not under an obligation to make the records available in particular

3

environments or under particular conditions. (Id. at 9, 39.) According to Defendants, it is common for an Auditor II to have to access records in wheelchair inaccessible locations or climb on ladders to reach high storage places. (Id. at 11-14.) Hernandez testified that the records could be "virtually anywhere" on a taxpayer's premises, and she has had to retrieve records and conduct audits in basements, attics, truck trailers, and warehouses. (Hernandez Dep. at 5-7.) Chu testified that since being hired as an Auditor II, she frequently must enter places that are not wheelchair accessible. (Chu Dep. at 16.) The examples she noted include basements and mining environments. (Id.)

After he was not selected for the position, Plaintiff filed a charge of discrimination with the Nevada Equal Rights Commission, and received his right to sue notification in February 2007. (Compl. at ¶ 4.) Plaintiff brings suit alleging that Defendants discriminated against him based on his disability in violation of the Americans with Disabilities Act ("ADA") and the Equal Protection Clause of the Fourteenth Amendment. (Compl. at ¶¶ 7, 12.)

**II. LEGAL STANDARD**

Summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any" demonstrate "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The substantive law defines which facts are material. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." Id. A dispute over a material fact is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id. Where a party fails to offer evidence sufficient to establish an element essential to its case, no genuine issue of material fact can exist, because "a complete failure of proof concerning

an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986).

The party moving for summary judgment bears the initial burden of showing the absence of a genuine issue of material fact. Fairbank v. Wunderman Cato Johnson, 212 F.3d 528, 531 (9th Cir. 2000). The burden then shifts to the non-moving party to go beyond the pleadings and set forth specific facts demonstrating there is a genuine issue for trial. Id.; Far Out Prods., Inc. v. Oskar, 247 F.3d 986, 997 (9th Cir. 2001). All justifiable inferences must be viewed in the light most favorable to the non-moving party. County of Tuolumne v. Sonora Cmty. Hosp., 236 F.3d 1148, 1154 (9th Cir. 2001).

## III. DISCUSSION

### A. Americans with Disabilities Act

Defendants argue they are entitled to summary judgment on Plaintiff's ADA claim because Plaintiff cannot perform the essential functions of the position; no reasonable accommodation exists that would enable Plaintiff to perform the essential functions of the position; and Defendants selected another applicant based on her qualifications with no discriminatory intent. Plaintiff argues in response that reasonable accommodations exist, but Defendants failed to interact with Plaintiff to develop a reasonable accommodation. Plaintiff argues Defendants could accommodate him by sending him only to wheelchair accessible locations, hiring an assistant, or requiring the audited taxpayer to hand him records he cannot reach himself.

The ADA provides, in relevant part, "No covered entity shall discriminate against a qualified individual with a disability because of the disability of such individual in regard to . . . hiring." 42 U.S.C. § 12112(a). The ADA defines discrimination as the failure to "make reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability who is an applicant or employee, unless such covered entity can demonstrate that the accommodation would impose an undue

hardship on the operation of the business." 42 U.S.C. § 12112(b)(5)(A). To state a prima facie case under the ADA, a plaintiff must demonstrate (1) he is disabled within the meaning of the ADA; (2) he is a qualified individual; and (3) he suffered an adverse employment action because of his disability. Nunes v. Wal-Mart Stores, Inc., 164 F.3d 1243, 1246 (9th Cir. 1999). The parties do not dispute that Plaintiff is disabled within the meaning of the ADA.

The ADA defines a qualified individual with a disability as one "who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C. § 12111(8). The employee bears the burden of proving he is qualified. Dark v. Curry County, 451 F.3d 1078, 1086 (9th Cir. 2006). Thus, the plaintiff must establish that he can perform the essential functions of the job he desires, with or without reasonable accommodation. Gambini v. Total Renal Care, Inc., 486 F.3d 1087, 1090 (9th Cir. 2007) (citing 42 U.S.C. § 12111(8)). The ADA does not require employers to exempt an employee from performing essential functions or to reallocate essential functions to other employees. Dark, 451. F.3d at 1089 (citing 29 C.F.R. § 1630).

Essential functions are the "fundamental job duties of the employment position," and do not "include the marginal functions of the position." Dark, 451 F.3d at 1087 (quoting 29 C.F.R. § 1630.2(n)(1)). In determining which functions are essential, consideration should be given to the employer's judgment and any written job description the employer authored prior to advertising and interviewing. Dark, 451 F.3d at 1087 (citing 42 U.S.C. § 12111(8)).

Defendants claim the "essential functions" of the Auditor II position include accessing taxpayer records when located in facilities where "less than reasonable accommodations exist (ie. [sic] no elevator, records stored in a warehouse)." (Mot. for Summ. J., Ex. A.) Defendants have produced evidence that working on premises that are

1  not wheelchair accessible is an essential function of the job because the Auditor II position
2  commonly requires conducting audits at inaccessible locations and the use of steps, ladders,
3  or stepping stools to access taxpayer records.

4        Plaintiff does not dispute Defendants' assessment that these job duties constitute
5  the essential functions of the Auditor II position.  Plaintiff concedes he cannot perform the
6  essential function of conducting audits in inaccessible premises.[1]  Instead, Plaintiff argues
7  he could conduct audits only in locations that are wheelchair accessible and other auditors
8  could be assigned to the inaccessible locations.  This does not constitute a reasonable
9  accommodation because it does not enable Plaintiff to perform the essential functions of the
10 job, but instead exempts him from performing essential functions of the job and reallocates
11 those functions to other employees.

12       For Plaintiff to survive summary judgment, he either must raise a genuine issue
13 of material fact that conducting audits in inaccessible premises is not an essential function,
14 or that he can perform the essential function with or without reasonable accommodation.
15 Because Plaintiff does not dispute that conducting audits at inaccessible premises is an
16 essential function and does not propose a reasonable accommodation that would enable him
17 to perform that essential function, Defendants are entitled to summary judgment on
18 Plaintiff's ADA claim.
19 ///
20 ///
21 ///

---

[1] In his Opposition, Plaintiff indicates he did not state unequivocally that he could not perform that essential function. Despite this statement, Plaintiff has stated he would have trouble with that function, and at no point testified or offered evidence that he is able to enter wheelchair inaccessible environments or access records that require climbing steps or ladders. Because Plaintiff's claim is based on his inability to work at various taxpayer locations, and Plaintiff nowhere testified he is able to work in these environments, Plaintiff has not raised a genuine issue that he is able to perform field audits at wheelchair inaccessible locations.

### B. Equal Protection

Plaintiff brings a claim under 42 U.S.C. § 1983 alleging Defendants violated his equal protection rights.[2] Defendants argue they are entitled to summary judgment on this claim because they are not persons under § 1983. Defendants also argue Plaintiff may not bring an equal protection claim under a class of one theory, because such a claim cannot be based upon a public employer's personnel decisions.

### 1. Defendants as "Persons" Under § 1983

Defendants argue they are entitled to summary judgment on Plaintiff's § 1983 claims against the Department of Taxation and the individual Defendants in their official capacities because such entities are not persons within the meaning of § 1983. Plaintiff argues in response that he sues the individual Defendants in their official capacities only for prospective relief, and thus his suit is proper.

#### a. Department of Taxation

"[A] State is not a 'person' within the meaning of § 1983." Will v. Mich. Dep't of State Police, 491 U.S. 58, 65 (1989). Therefore, a State or arm of a State may not be sued under § 1983. Id. Accordingly, Plaintiff's § 1983 claim against the State of Nevada, ex rel. Department of Taxation fails as a matter of law. This Court will grant summary judgment in Defendants' favor on Plaintiff's § 1983 claim against the Department of Taxation.

#### b. Individual Defendants

Generally, a suit against a state official in his official capacity is the same as a suit against the State itself and thus is not permitted under § 1983. Will, 491 U.S. at 71.

---

[2] Defendants also move for summary judgment based on their belief that Plaintiff brought a claim under 42 U.S.C. § 1983 based on an alleged ADA violation. Plaintiff responded by clarifying that his § 1983 claim is based solely on equal protection grounds, and not the ADA. This aspect of Defendants' motion therefore is moot.

8

However, when sued for injunctive relief, a state official is a person under § 1983. Id.

Plaintiff seeks only prospective injunctive relief against the individual Defendants in their official capacities. (Compl. at ¶ 12.) Because Plaintiff seeks only prospective relief against the individual Defendants, they are persons within the scope of § 1983. This Court therefore will not grant summary judgment in the individual Defendants' favor on this basis.

### 2. Class of One Equal Protection Claim

Defendants argue that the class of one theory of equal protection violations does not apply to Plaintiff's claim because the theory does not cover decisions government employers make with respect to employment. Defendants further argue that even if the theory applies, their actions survive the rational basis scrutiny under which they should be evaluated. Plaintiff argues the class of one theory applies to Defendants' decision not to hire him because Plaintiff is not a public employee.

An individual may bring an equal protection claim as a "class of one" if the "plaintiff alleges []he has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." Village of Willowbrook v. Olech, 528 U.S. 562, 564 (2000) (per curiam). The purpose of such a claim is to address "intentional and arbitrary discrimination." Id. (quotation omitted). However, the United States Court of Appeals for the Ninth Circuit recently ruled that the class of one theory of equal protection does not apply to decisions made by public employers. Engquist v. Or. Dep't of Agric., 478 F.3d 985, 982 (9th Cir. 2007). In so ruling, the Court recognized the established distinction between the government as proprietor that manages internal affairs and the government as lawmaker, and that the government enjoys far broader discretionary powers as an employer than as a sovereign. Id. at 994 (quotations omitted). Accordingly, a federal court's scope of review of personnel decisions should be restricted. Id. at 995. The Court also noted that this is one area of constitutional law,

among many, in which the rights of public employees are limited to allow the government to act efficiently as an employer. Id. at 994-95. The Ninth Circuit acknowledged the concern that, unless constrained, a class of one theory of equal protection could create a federal cause of action for almost every government decision. Id. at 993.

Because the Ninth Circuit ruled that class of one equal protection claims do not apply to public employers' decisions regarding employment, Plaintiff's class of one equal protection claim against Defendants for failing to hire him cannot survive. Plaintiff's status as an applicant for public employment as opposed to a public employee like the Engquist plaintiff does not put Plaintiff beyond Engquist's reach. Though the Ninth Circuit partly drew upon public employees' reduced rights for one aspect of its rationale, more central to the Court's holding were its concern that all government decisions could become constitutional rights issues and its reluctance to subject federal courts to reviewing personnel matters. Because Defendants' action was a personnel decision which cannot sustain a class of one equal protection claim, this Court will grant summary judgment in the individual Defendants' favor on Plaintiff's § 1983 claim for an alleged violation of his equal protection rights.

## IV.   CONCLUSION

IT IS THEREFORE ORDERED that Defendants' Motion for Summary Judgment (Doc. #10) is GRANTED, and the Clerk of Court is hereby directed to enter JUDGMENT in favor of Defendants and against Plaintiff.

DATED:   May 22, 2008.

_____
PHILIP M. PRO
United States District Judge